UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANONYMOUS,
     Plaintiff,
    v.
CITY OF MERIDEN, RAYMOND BARNES, and
JEFFRY W. COSSETTE,
     Defendants.

No. 3:10cv37 (MPS)

**RULING AND ORDER**

This case arises from allegations that Defendant Raymond Barnes, a Meriden police officer, sexually assaulted Plaintiff, who was fifteen years old at the time, on two separate occasions in 2007. Plaintiff brings a nine-count Second Amended Complaint [Dkt. # 57] against Officer Barnes, Chief of Police Jeffry W. Cossette, and the City of Meriden, alleging various state law tort claims against Barnes, claims under 42 U.S.C. § 1983 against all Defendants, and a claim under Conn. Gen. Stat. § 52-577n against the City. On September 7, 2012, the Court granted Plaintiff's motion for default judgment against Officer Barnes—who had failed to appear in this action—and referred the matter to the Honorable William I. Garfinkel, United States Magistrate Judge, for a hearing on damages. (Order [Dkt. # 142].) The issue that remains is whether Chief Cossette and the City are also liable for Officer Barnes's actions. On the record before it, the Court finds that they are not and grants their Motion for Summary Judgment [Dkt. # 104]. Plaintiff has failed to submit evidence raising a triable issue that the City's and the Chief's allegedly inadequate supervision of Barnes reached the point of deliberate indifference or that it was the proximate cause of Barnes's sexual assaults of Plaintiff. In particular, the nature of the previous misconduct by Barnes during his eight-year tenure as a City police officer— which involved abuse of his position as a police officer during an argument with a neighbor and his sleeping at home while he was on night duty—did not put the City or Chief Cossette on

notice that Barnes would sexually abuse a minor such that their failure to prevent this conduct stemmed from "deliberate indifference" to that possibility.  For the same reason, their supervision of Barnes—or any deficiencies in their supervision—cannot be seen as the "moving force" behind the sexual assaults, the only unconstitutional conduct at issue in this case, and thus does not satisfy the causation standard under § 1983.  Finally, the § 52-577n claim against the City fails because that statute expressly immunizes municipalities from liability for intentional misconduct of their employees.

## I.   Background

The following facts are culled from the parties' Local Rule 56(a) Statements, affidavits, and exhibits.  The Court presents all facts "in the light most favorable to the nonmoving party"— here, Plaintiff—after drawing "all reasonable inferences in [her] favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000) (quotation marks omitted).  Additional facts are discussed in the analysis where relevant.

Officer Raymond Barnes joined the City's police department in 1999.  (Defs.' Local Rule 56(a)(1) Statement [Dkt. # 104-2] ¶ 1.)  He satisfactorily completed a basic police recruit training program administered by the Police Officers Standards and Training council, which is a condition of employment with the Meriden Police Department. (*Id.* ¶ 50; T. Cossette Aff. [Dkt. # 104-16] ¶¶ 5-9.)  Consistent with the Department's requirements, Officer Barnes also attended sixty hours of supplemental training courses to stay current on his certification as a police officer.  (T. Cossette Aff. ¶¶ 7-9.)  Officer Barnes was given two performance appraisals, one in 2003 and the other in 2007, and received generally positive reviews.  (Defs.' Local Rule 56(a)(1) Statement ¶¶ 2-3.)

Prior to 2007, Officer Barnes was twice investigated and disciplined by the Internal Affairs Division of the Meriden Police Department. In 2004, a neighbor in Officer Barnes's condominium complained that Officer Barnes had two unregistered vehicles, that he regularly parked his vehicles improperly, and that on January 24, 2004, he used vulgarities and threatened her after she had called the property manager to complain about his improperly parked cars. (Ex. E to Pl.'s Resp. [Dkt. # 126].) A tow truck was called, and Officer Barnes, in an apparent abuse of authority, told the tow truck driver that he was not going to tow any vehicles that night. (*Id.*) The Internal Affairs investigation report found that "Officer Barnes brought discredit to [the] department by his actions," and Officer Barnes was issued a letter of counseling. (*Id.*) And in 2006, Officer Barnes was suspended for fifteen days after he spent lengthy periods of time at home when he was supposed to be on duty during his midnight shift. (Defs.' Local Rule 56(a)(1) Statement ¶ 47.) An Internal Affairs investigation revealed that during a three-week period from June 15 to July 10, 2006, Officer Barnes was at home when he should have been on patrol, and that he lied about his location on the nightly roll call. (Ex. D to Pl.'s Resp.)

Neither of the Internal Affairs investigations into Officer Barnes's misconduct concerned any allegations of sexual misconduct or criminal conduct. (*See* Exs. D, E to Pl.'s Resp.) And prior to Officer Barnes's two sexual assaults in December 2007, Chief Cossette was unaware of any prior complaints against Officer Barnes that involved sexual assault. (Defs.' Local Rule 56(a)(1) Statement ¶ 49.) In addition, there is no evidence that any other Meriden police officer—aside from Officer Barnes—had been accused of sexually assaulting a minor. (*Id.* ¶ 46.)

Two separate sexual assaults occurred: the first on December 22, 2007 and the second on December 30, 2007.[1]  (*Id.* ¶¶ 11-13, 21.)  Both assaults occurred in the private residence of a mutual acquaintance of Plaintiff and Officer Barnes, and on both occasions Officer Barnes had been drinking. (*Id.* ¶¶ 11, 23.)  There is a genuine dispute about whether Officer Barnes was wearing his police uniform and was on duty during one of the assaults.  (*Compare* Anonymous Dep. [Dkt. # 104-13] at 9, *with* Ex. A to Pl.'s Resp. (Teresa Zavaglia's police report stating "I'm pretty sure that Officer Barnes was wearing his police uniform . . . . I remember his radio going off and I think he got sent to Water St. on a call.").)[2]  It is undisputed that he was not in uniform and not on duty during the second assault.  (*See* Defs.' Local Rule 56(a)(1) Statement ¶¶ 10, 17; Second Am. Compl. [Dkt. # 57] ¶ 2.)

Plaintiff did not file any complaint or otherwise notify the Meriden Police Department that she was sexually assaulted by Officer Barnes until January 5, 2008.  (Defs.' Local Rule 56(a)(1) Statement ¶ 31; Anonymous Dep. at 9.)  Maria Zavaglia, an acquaintance of both Plaintiff and Barnes who was aware of the assaults, also did not alert the Meriden Police Department about the sexual assaults.  (Defs.' Local Rule 56(a)(1) Statement ¶ 32.)  Prior to January 5, 2008, Chief Cossette did not know and had no reason to know that Officer Barnes had

---

[1] Each sexual assault took place late in the evening and into the early morning hours of the following day.  For simplicity's sake, however, the Court will use the two dates above.

[2] Even though there is a genuine dispute about whether Officer Barnes was in uniform and on duty, it is doubtful that Officer Barnes was acting under "color of state law" for the purposes of 42 U.S.C. § 1983.  *See Gibson v. City of Chicago*, 910 F.2d 1510, 1516-17 (7th Cir. 1990) ("Acts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties." (brackets and internal quotation marks omitted)); *Bonsignore v. City of New York*, 683 F.2d 635, 638-39 (2d Cir. 1982) (concluding that a police officer was not acting under color of state law because his actions were not "committed in the performance of any actual or pretended duty").  Defendants, however, have not raised this ground in their motion for summary judgment, and, as there are other grounds that justify granting the motion for summary judgment, the Court need not address the "color of state law" issue.

4

sexually assaulted a minor. (*Id.* ¶ 48.) There is no evidence in the record that the Meriden Police Department or Chief Cossette had any notice of the first sexual assault until after the second assault had already happened.

On January 5, 2008, Plaintiff notified the Meriden police that Officer Barnes sexually assaulted her. (*Id.* ¶ 4.) Shortly thereafter, Chief Cossette assigned Detective Mark Walerysiak to perform an internal investigation of these allegations and placed Officer Barnes on administrative leave. (*Id.* ¶¶ 5, 38.) Based on his investigation, Detective Walerysiak applied for a warrant for the arrest of Officer Barnes for various charges relating to the sexual assaults. (*Id.* ¶¶ 35-36.) Even though Detective Walerysiak submitted an application for an arrest warrant (*see* Application for Arrest Warrant, Ex. C to Defs.' Mem. of Law), a warrant never issued. (Walerysiak Aff. ¶ 35., Ex D to Defs.' Mem. of Law.) Plaintiff has submitted no evidence that the City or Chief Cossette refrained from seeking to prosecute Barnes for the sexual assaults, and no evidence as to why the State's Attorney chose not to bring charges.[3]

On May 13, 2008, the Meriden Police Department completed its Internal Affairs investigation of Officer Barnes, finding that he violated multiple departmental rules. (Defs.' Local Rule 56(a)(1) Statement ¶ 39.) The Department held a disciplinary hearing on June 2, 2008, and determined that there was just cause to fire Officer Barnes. (*Id.* ¶ 41.) Although Officer Barnes initially grieved this determination, he ultimately reached a settlement with the Department under which he resigned and released the City of all liability on any possible employment claims, in exchange for $ 5000. (*Id.* ¶¶ 42-43.)

---

[3] Although the parties dispute the nature of the City's response to Plaintiff's allegation in early 2008, the Court views the disagreement as immaterial. Regardless of the City's response to Plaintiff's complaints, and irrespective of the reasons why Officer Barnes was not charged with a crime, any actions taken by the City or Chief Cossette in 2008 did not cause the 2007 assaults.

## II. Standard of Review

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving parties—here, the City and Chief Cossette—bear the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006).

If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

## III. Discussion

In her response brief, Plaintiff abandons the Eighth and Ninth Counts against the City. (Pl.'s Resp. at 18–19.) Thus, only two counts remain against the City and Chief Cossette: (1) the Fourth Count, which alleges that the City and Chief Cossette violated § 1983, and (2) the Seventh Count, alleging that the City is liable under Conn. Gen. Stat. § 52-557n.

### a. Fourth Count: § 1983

Plaintiff's § 1983 claim against the City and her § 1983 claim against Chief Cossette fail for largely the same reasons: there is insufficient evidence (1) that the City or Chief Cossette

were deliberately indifferent to the rights of others, or (2) that the purportedly deficient supervision caused the sexual assaults.

### 1. *Monell* Liability

A municipality is liable under § 1983 only if it had a "policy or custom" that caused the constitutional injury. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). In certain circumstances, municipal nonfeasance—including the failure to train or supervise—can qualify as a "policy" sufficient for liability to attach. *See Finch v. City of Stamford*, No. 3:10cv748 (MRK), 2011 WL 5245422, at *3 (D. Conn. 2011) ("Even municipal sins of omission can count as policies . . . ."). In order for municipal nonfeasance—e.g., the failure to train, to supervise, or to discipline—to give rise to *Monell* liability, the alleged municipal failure must "amount[] to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).

In *Reynolds*, the Second Circuit articulated three independent requirements that a Plaintiff must meet to establish *Monell* liability:

> *Monell*'s policy or custom requirement . . . obligates plaintiffs to (1) establish . . . defendants' duty to act by proving they should have known their inadequate supervision was so likely to result in the alleged deprivations so as constitute deliberate indifference under *Walker* [*v. City of New York*, 974 F.2d 293 (2d Cir. 1992)]; (2) identify obvious and severe deficiencies in the . . . defendants' supervision that reflect a purposeful rather than negligent course of action; and (3) show a causal relationship between the failure to supervise and the alleged deprivations to plaintiffs.

*Reynolds*, 506 F.3d at 192.  Plaintiff's *Monell* claim founders on the first and third prongs.[4]

With respect to the first requirement articulated in *Reynolds*, Plaintiff has not established that a genuine dispute exists as to whether the deficiency in the supervision of Officer Barnes was "so patently inadequate to the task as to amount to deliberate indifference." *Id.* at 192-93.[5] "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).  In *Walker v. City of New York*, the Second Circuit discerned three component requirements "that must be met" for a plaintiff to establish the requisite "deliberate indifference":

> First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation. . . . Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. . . . Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Walker*, 974 F.2d at 297–98 (quotation marks and citations omitted); *see also Reynolds*, 506 F.3d at 192 ("*Walker* . . . is best understood as establishing the circumstances that give rise to a defendant supervisor's duty to act or, more precisely, the circumstances under which a supervisor's failure to act triggers liability under § 1983.").

There is no genuine dispute that the City's failure to supervise Officer Barnes did not constitute deliberate indifference under *Walker*.  Even if the City or Chief Cossette could have

---

[4] Although the Court rests its decision to grant summary judgment on the Fourth Count on the absence of evidence creating a triable issue with respect to the first and third of the *Reynolds* requirements, the Court observes that the second requirement is also problematic for Plaintiff's case.

[5] Plaintiff acknowledges that she has not put forward evidence sufficient to resist summary judgment on her claim of failure-to-train liability and contends instead that Defendants are liable under § 1983 because they failed to supervise or adequately discipline Officer Barnes. (Pl.'s Resp. at 6.)

known to a "moral certainty" that Meriden police officers would encounter situations in which they could commit sexual assault on a minor, the decision not to commit sexual assault on a minor is not a "difficult choice"; it is a simple matter of complying with the criminal law. *See* Conn. Gen. Stat. § 53a-71 (making an adult's sexual intercourse with a person under sixteen years of age a Class B felony). Better supervision would not do any good where basic morality and decency, not to mention the threat of serious criminal sanction, have failed. *See Walker*, 974 F.2d at 299–300 ("Where the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not so likely to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." (quotation marks omitted)). Nor is there evidence of "a history of employees mishandling the situation": There is no evidence of other Meriden officers sexually assaulting a minor (*see* Defs.' Local Rule 56(a)(1) Statement ¶ 46), or of Officer Barnes committing sexual crimes prior to the two assaults in December 2007 (*see id.* ¶ 49). Under the second prong of *Walker*, Plaintiff has therefore failed to show that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." *Walker*, 974 F.2d at 297.

With respect to causation—the third requirement articulated in *Reynolds*—no reasonable juror could infer that the City's inaction caused the deprivation of Plaintiff's rights. Plaintiff is required to establish more than but-for causation—i.e., that but for the alleged inadequate supervision, she would not have been injured. Plaintiff must demonstrate that the municipal "policy" at issue was the "moving force" behind her injuries. *City of Canton*, 489 U.S. at 389. As the Supreme Court made clear, "the identified deficiency . . . must be closely related to the ultimate injury." *Id.* at 391. Plaintiff "must still prove that the deficiency in [supervision]

actually caused" the conduct that violated her constitutional rights. *Id.* This standard is akin to proximate cause. *See Cash v. Cnty. of Erie*, 654 F.3d 324, 342 (2d Cir. 2011) (noting that "'proximate cause,' although derived from tort law, fairly describes a plaintiff's causation burden with respect to a municipal liability claim under § 1983"); *accord Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Plaintiff attempts to finesse her obligation to demonstrate that the City's alleged supervisory deficiencies were the "moving force" or proximate cause of the harm by characterizing Officer Barnes's past misconduct broadly. She argues that the City was actually or constructively aware of "a pervasive pattern of abuse of power and neglect of duty by Raymond Barnes," based on Internal Affairs reports which showed that Officer Barnes (1) engaged in a verbal altercation with his neighbor in 2004, (2) drove two cars with invalid registrations, and (3) falsely reported his location on roll calls when he was supposed to be on duty on the midnight shift. (Pl.'s Resp. at 10–11.) Plaintiff further notes that Officer Barnes had previously visited the residence where the sexual assaults occurred while he was on duty on multiple occasions, and often late at night. (*Id.*) None of this evidence comes close to suggesting that the allegedly deficient supervision was a "moving force" behind Barnes's sexual assault of Plaintiff. *See City of Canton*, 489 U.S. at 389. The alleged inadequate supervision— here, the failure to take steps to prevent his earlier misconduct or to discipline him more severely for that misconduct—is not "closely related" to the sexual assaults against Plaintiff. Officer Barnes's past misconduct was of a different kind and magnitude than his later assaults. At most, Officer Barnes's past misconduct put the City on notice that he was a lazy and dishonest police officer with a temper. It did not put the City on notice that he was likely to sexually assault a minor. Absent such notice, the December 2007 assaults were not reasonably foreseeable

consequences of inadequate supervision, *cf.* Conn. Civil Jury Instruction 3.1-7: Proximate Cause – Foreseeable Risk (noting that to "prove that an injury is a reasonably foreseeable consequence of negligent conduct, a plaintiff . . . must prove that it is a harm of the same general nature as that which a reasonably prudent person in the defendant's position should have anticipated, in view of what the defendant knew or should have known at the time of the negligent conduct"), and any deficiency in supervision is not "closely related" to the ultimate injuries, *see City of Canton*, 489 U.S. at 393. Thus, Plaintiff's *Monell* claim also fails for want of proximate causation.

### 2. Chief Cossette's Supervisory Liability

A police chief cannot be held liable under § 1983 "merely because his subordinate committed a constitutional tort." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002). A prerequisite to § 1983 damages is the "personal involvement of defendants in alleged constitutional deprivations." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted). Thus, to succeed on her claim for individual damages against Chief Cossette,[6] Plaintiff must establish that Chief Cossette "was personally involved—that is, he directly participated—in the alleged . . . deprivations." *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005). As the parties agree that Chief Cossette was not present during either of the assaults, Plaintiff must demonstrate Chief Cossette's personal involvement on an alternative ground.

In *Poe*, the Second Circuit observed that in certain circumstances personal involvement is imputed to supervisors:

---

[6] To the extent that the Fourth Count seeks relief from Chief Cossette in his official capacity, the claim is duplicative of the *Monell* claim against Meriden and may be dismissed for the same reasons discussed above. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . It is not a suit against the official personally, for the real party in interest is the entity." (citation omitted)).

> [A] supervisor may be found liable [1] for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or [2] for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury.

*Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002). Plaintiff's claim fails under the *Poe* standard, as the evidence in the record does not support a reasonable finding of either "deliberate indifference" or "gross negligence." First, Chief Cossette had no information that unconstitutional acts were occurring. While Chief Cossette was aware that Officer Barnes had shirked his job responsibilities and threatened his neighbor, the Chief was unaware that the sexual assaults were occurring or were going to occur. It is undisputed that Chief Cossette first learned of the sexual assaults in January 2008, after both assaults had occurred. Thus, Chief Cossette cannot be liable for any "failure to act on information indicating unconstitutional acts were occurring." *Id.*

Nor would the evidence in the record permit a reasonable juror to find that Chief Cossette was grossly negligent in failing to supervise Officer Barnes. The Second Circuit equates gross negligence with recklessness and defines it "as the kind of conduct where the defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk." *Poe*, 282 F.3d at 140 n.14 (internal quotations, brackets, and ellipsis omitted). The evidence in the record does not indicate that Chief Cossette had any reason to know of a "high degree of risk" that Plaintiff would be harmed by reason of his allegedly inadequate supervision. Officer Barnes's earlier misconduct was not of the type that generally creates a risk of sexual assault, and Chief Cossette therefore is not liable for "gross negligence in failing to supervise his subordinates." *Id.* at 140. In any event, the evidence establishes that after it was discovered that Officer Barnes spent time

at home when he was supposed to be on duty, Chief Cossette imposed a fifteen-day suspension, and warned Officer Barnes that "any future problems in this area may result in termination." (Ex. D to Pl.'s Resp.; *see also* Defs.' Local Rule 56(a)(1) Statement ¶ 47.)  It cannot be gainsaid that Chief Cossette took significant disciplinary action, and no reasonable juror could conclude on the basis of this evidence that Chief Cossette was grossly negligent in supervising Officer Barnes.

Plaintiff's claim is also deficient inasmuch as the evidence cannot reasonably support a finding that Chief Cossette's purported inadequate supervision proximately caused the sexual assaults.  *See Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (observing in the context of a failure-to-supervise claim related to the excessive use of force, that a "supervisor's liability is not for the use of excessive force . . . but for distinct acts or omissions that are a *proximate cause* of the use of that force" (emphasis added)); *see also Poe*, 282 F.3d at 134.  For the same reasons discussed previously with respect to Plaintiff's failure to establish causation in her *Monell* claim, there is no genuine issue of material fact with respect to proximate cause.  Officer Barnes's past misconduct was of a different character, and thus it was not foreseeable that inadequate supervision would cause Mr. Barnes to commit sexual assault.  In sum, Chief Cossette is not liable under § 1983.[7]

### B. Seventh Count: Conn. Gen. Stat. § 52-557n

The Seventh Count alleges that the City is liable under Conn. Gen. Stat. § 52-557n. Section 52-557n provides that

> a political subdivision of the state shall be liable for damages to person or property caused by . . . [t]he negligent acts or omissions of such political subdivision or any

---

[7] In light of this conclusion, the Court does not address the argument that Chief Cossette is entitled to qualified immunity. (*See* Defs.' Mem. of Law at 14–20.)

employee, officer or agent thereof acting within the scope of his employment or official duties . . . .

Conn. Gen. Stat. § 52-557n(a)(1)(A).  The next subsection makes clear that the scope of municipal liability is limited to negligent—rather than intentional—acts:

> a political subdivision of the state shall not be liable for damages to person or property caused by: . . . [a]cts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct . . .

Conn. Gen. Stat. § 52-557n(a)(2)(A); *see also Dubay v. Irish*, 207 Conn. 518, 533 & n.8 (1988) (noting that under Connecticut law, willful conduct is tantamount to intentional conduct); *Avoletta v. City of Torrington*, 133 Conn. App. 215, 224 (2012) ("[A] municipality cannot be held liable for the intentional torts of its employees.").

The City is not liable under § 52-557n because there is no genuine factual dispute that Officer Barnes's conduct was intentional rather than negligent.[8]  Officer Barnes sexually assaulted Plaintiff twice when she was a minor.  Sexual assault of a minor is both a crime and an intentional tort under Connecticut law,[9] and as Defendants' counsel observed during oral

---

[8] Plaintiff assumes that Officer Barnes is the only employee whose acts could form the basis of the City's liability under § 52-557n.  (*See* Pl.'s Resp. at 17-18.)  The Court agrees with this assumption.  Even if there were a genuine factual dispute that Chief Cossette acted negligently, the City would not be liable because Chief Cossette's acts were discretionary, *see* Conn. Gen. Stat. § 52-557n(a)(2)(B) (immunizing municipalities from liability for damages caused by the discretionary acts of its employees), and because the "identifiable person–imminent harm" exception to § 52-557n(a)(2)(B) immunity would not apply in light of the fact that Plaintiff was not an identifiable victim from Chief Cossette's perspective.

[9] As Plaintiff alleges in her complaint, Officer Barnes's actions "constitut[e] sexual assault in the second degree, punishable as a Class C felony pursuant to Section 53a-71 of the Connecticut General Statutes." (Second Am. Compl. ¶ 16.)  Section 53a-71 actually makes Officer Barnes's conduct a Class B felony, because Plaintiff was under sixteen years of age at the time.  Conn. Gen. Stat. § 53a-71(b).  Although the Court is unaware of a Connecticut Appellate Court or Supreme Court decision that directly addresses the issue, many Superior Court decisions have held that sexual assault of a minor is an intentional tort because an "intent to injure may be inferred as a matter of law in cases involving sexual contact between a child and an adult regardless of . . . subjective intent." *Perron v. Robert*, CV000073800S, 2002 WL 31538217, at *2 (Conn. Super. Ct. Nov. 1, 2002) *aff'd*, 81 Conn. App. 903 (2004); *see also, e.g.*,

14

argument, the Connecticut Supreme Court has stated that intentional conduct and negligent conduct are mutually exclusive. *See DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 693 (2004) ("Intentional conduct and negligent conduct . . . are separate and mutually exclusive." (citation, brackets, and internal quotation marks omitted)). The fact that Plaintiff has alleged a claim of negligent infliction of emotional distress against Officer Barnes, in addition to various intentional torts, does not affect the analysis. Plaintiff's claim for negligent infliction of emotional distress is expressly based on the same facts that underlie her other claims against Barnes, namely that he sexually assaulted Plaintiff. (Second Am. Compl. ¶¶ 48, 49.) The act of sexual assault constitutes both "criminal conduct" and "wilful misconduct" within the meaning of § 52-557n(a)(2)(A). The City is therefore not liable for Officer Barnes's conduct under § 52-557n. *See Avoletta*, 133 Conn. App. at 224.[10]

---

*Patrons Mut. Ins. Co. of Conn. v. Maguire*, CV 950374329S, 1997 WL 162821, at *4 (Conn. Super. Ct. Mar. 26, 1997) (citing cases).

[10] Although Defendants asserted only at oral argument and not in their summary judgment papers that the City is not liable because Officer Barnes's actions were willful under Conn. Gen. Stat. § 52-557n(a)(1)(B), Plaintiff, by bringing a § 52-557n claim, was on notice that she needed to satisfy the requirements of the statute. As such, the Court concludes that it need not issue a Rule 56(f)(2) notice. *See* Fed. R. Civ. P. 56(f)(2) ("Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may . . . (2) grant the motion on grounds not raised by a party . . . ."). However, if Plaintiff moves for reconsideration of this Order, the Court will permit her to file any additional evidence that would establish that a genuine factual dispute exists as to whether Officer Barnes's conduct was intentional. Plaintiff is advised that if she moves for reconsideration, the Court will also consider two additional independent grounds for summary judgment, which were not raised by Defendants: (1) that the City is not liable under § 52-557n(a)(1)(A) because Officer Barnes was not "acting within the scope of his employment or official duties" when he sexually assaulted plaintiff, *see Doe v. Burns*, CV030100215S, 2005 WL 2210320, at *3-4 (Conn. Super. Ct. July 19, 2005); and (2) that Officer Barnes was not acting under the "color of state law" when he sexually assaulted Plaintiff.

## IV.     Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment [Dkt. # 104] is GRANTED.  Plaintiff's counsel is instructed to contact the Honorable William I. Garfinkel's Chambers within seven days of this Order to schedule a damages hearing with respect to Officer Barnes.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                May 22nd, 2013